01

02

03

04

05                            UNITED STATES DISTRICT COURT
                             WESTERN DISTRICT OF WASHINGTON
06                                      AT SEATTLE

07  AMBER E. LANDRY,                        )
                                            )   CASE NO. C13-1491-RAJ-MAT
08          Plaintiff,                      )
                                            )
09          v.                              )   REPORT AND RECOMMENDATION
                                            )   RE: SOCIAL SECURITY DISABILITY
10  CAROLYN W. COLVIN, Acting               )   APPEAL
    Commissioner of Social Security,        )
11                                          )
            Defendant.                      )
12  _____ )

13          Plaintiff Amber E. Landry proceeds through counsel in her appeal of a final decision of

14  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

15  denied plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an

16  Administrative Law Judge (ALJ).   Having considered the ALJ's decision, the administrative

17  record (AR), and all memoranda, the Court recommends this matter be REMANDED for

18  further administrative proceedings.

19                          **FACTS AND PROCEDURAL HISTORY**

20          Plaintiff was born on XXXX, 1966.[1]   She has a two-year college degree and previously

21  
    _____

22          1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
    Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

    REPORT & RECOMMENDATION
    PAGE -1

01  worked as a dancer, general house worker, and pharmacy technician.   (AR 30, 41, 146.)

02          With a filing month of October 2009, plaintiff filed an application for DIB, alleging

03  disability since December 30, 2007.   (AR 177-82.)   Plaintiff remained insured for DIB

04  through June 30, 2009 and, therefore, was required to establish disability on or prior to that

05  "date last insured" (DLI).   *See* 20 C.F.R. §§ 404.131, 404.321.   Her application was denied

06  initially and on reconsideration, and she timely requested a hearing.

07          ALJ Verrell Dethloff held a hearing on December 6, 2011, taking testimony from

08  plaintiff.   (AR 38-60.)   On December 23, 2011, the ALJ rendered a decision finding plaintiff

09  not disabled.   (AR 14-32.)   Plaintiff timely appealed.

10          The Appeals Council denied plaintiff's request for review on June 21, 2013 (AR 1-3),

11  making the ALJ's decision the final decision of the Commissioner.   Plaintiff appealed this

12  final decision of the Commissioner to this Court.

13                                              **<u>JURISDICTION</u>**

14          The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

15                                              **<u>DISCUSSION</u>**

16          The Commissioner follows a five-step sequential evaluation process for determining

17  whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

18  must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

19  not engaged in substantial gainful activity since December 30, 2007, the alleged onset date,

20  through her DLI.   At step two, it must be determined whether a claimant suffers from a severe

21  impairment.   The ALJ found plaintiff's reflex sympathetic dystrophy and degenerative disc

22  ─────────────────────────────────────────────────────────

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

disease of the cervical spine with myofascial pain syndrome severe.  He found other physical impairments not severe and found no medically determinable mental impairment prior to the DLI beyond plaintiff's history of heroin abuse, in remission since 2002.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff had the RFC to perform essentially a full range of unskilled light work, including the ability to lift twenty pounds occasionally and ten pounds frequently, and to sit and stand and/or walk for about six hours in an eight-hour workday.  The ALJ further found plaintiff could frequently push and/or pull with her upper extremities, could occasionally reach overhead with her upper extremities, could never climb ladders, ropes, or scaffolds, could occasionally stoop and crawl, could frequently climb ramps and stairs, balance, kneel, and crouch, and had to avoid concentrated exposure to extreme cold, vibrations, and hazards such as dangerous machinery and unprotected heights.  With this RFC, the ALJ found plaintiff unable to perform any past relevant work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  Applying the Medical-Vocational Guidelines, and considering both light and sedentary work, the ALJ concluded there were jobs existing in significant numbers in the national economy plaintiff

01 could perform.   The ALJ, therefore, concluded plaintiff was not disabled at any time from the

02 alleged onset date through her DLI.

03        This Court's review of the final decision is limited to whether the decision is in

04 accordance with the law and the findings supported by substantial evidence in the record as a

05 whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

06 more than a scintilla, but less than a preponderance; it means such relevant evidence as a

07 reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

08 F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

09 supports the final decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

10 F.3d 947, 954 (9th Cir. 2002).

11        Plaintiff argues the ALJ erred in failing to obtain vocational expert testimony at step

12 five, in finding no medically determinable mental impairment prior to the DLI, and in assessing

13 her credibility and a lay witness statement.   She requests remand for further administrative

14 proceedings.   The Commissioner maintains the ALJ's decision has the support of substantial

15 evidence and should be affirmed.

16                                                          <u>Step Five</u>

17        The Medical-Vocational Guidelines or "grids" present a short-hand method for

18 determining the availability and numbers of suitable jobs for claimants, addressing factors

19 relevant to a claimant's ability to work, such as age, education, and work experience.   *See* 20

20 C.F.R. Pt. 404, Subpt. P, App 2.   Their purpose is to streamline the administrative process and

21 encourage uniform treatment of claims.   *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

22        An ALJ may rely on the grids to meet his burden at step five.   *Burkhart v. Bowen*, 856

REPORT & RECOMMENDATION
PAGE -4

01  F.2d 1335, 1340 (9th Cir. 1988).   "They may be used, however, 'only when the grids

02  accurately and completely describe the claimant's abilities and limitations.'"   *Id.*   (quoting

03  *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).   When the grids do not adequately

04  account for all of a claimant's abilities and limitations, the ALJ must consult a vocational expert

05  (VE).   *Thomas*, 278 F.3d at 960 (the ALJ "fulfills his obligation to determine the claimant's

06  occupational base by consulting a [VE] regarding whether a person with claimant's profile

07  could perform substantial gainful work in the economy.") (citing *Moore v. Apfel*, 216 F.3d 864,

08  869 (9th Cir. 2000)).

09        The existence of a non-exertional limitation does not automatically preclude application

10  of the grids.   *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir.

11  1988).   *See also* Social Security Ruling (SSR) 83-14 ("Nonexertional impairments . . . may or

12  may not significantly narrow the range of work a person can do.");   *Razey v. Heckler*, 785 F.2d

13  1426, 1430 (9th Cir. 1986) ("The regulations . . . explicitly provide for the evaluation of

14  claimants asserting both exertional and nonexertional limitations. [20 C.F.R. Pt. 404, Subpt. P,

15  App. 2] at § 200.00(e).");   *modified at* 794 F.2d 1348 (1986).   Instead, the ALJ must determine

16  whether the non-exertional limitations are "'sufficiently severe' so as to significantly limit the

17  range of work permitted by the claimant's exertional limitations[.]"   *Burkhart*, 856 F.2d at

18  1340 (quoting *Desrosiers*, 846 F.2d at 577).   If so, the grids are inapplicable and the testimony

19  of a VE is required.   *Id*.

20        In this case, as argued by plaintiff, the ALJ erred by failing to call a VE.   That is, the

21  nonexertional limitation to only occasional overhead reaching with upper extremities,

22  considered in combination with the nonexertional limitation to avoiding concentrated exposure

01 to extreme cold, vibration, and hazards such as dangers machinery and unprotected heights,

02 presented a significant limitation on the range of work plaintiff could perform and, therefore,

03 necessitated the testimony of a VE.   *See, e.g.*, *Buford v. Colvin*, No. C13-900, 2013 U.S. Dist.

04 LEXIS 182468 at *17-20 (W.D. Wash. Dec. 3, 2013) (ALJ erred in failing to call VE where

05 claimant limited to occasional overhead reaching on the right), *adopted by* 2014 U.S. Dist.

06 LEXIS 1110 (Jan. 3, 2014); *Gerrity v. Astrue*, No. C12-5358, 2013 U.S. Dist. LEXIS 11930 at

07 *4-7 (W.D. Wash. Jan. 7, 2013) (ALJ erred in failing to call VE where plaintiff limited to

08 occasional overhead reaching and likely not capable of using hands and arms at or above

09 shoulder level while standing), *adopted by* 2013 U.S. Dist. LEXIS 11957 (Jan. 29, 2013); *Byrd*

10 *v. Astrue*, C08-1248, 2009 U.S. Dist. LEXIS 128130 at *23-30 (W.D. Wash. Apr. 16, 2009)

11 (finding error with consideration of limitations cumulatively:   "That is, considering limitations

12 on performing non-repetitive work, involving interaction with more than a few co-workers and

13 concentrated exposures to hazards, the occupational base for unskilled light work may well be

14 limited enough to necessitate the assistance of a VE."), *adopted by* 2009 U.S. Dist. LEXIS

15 40899 (May 13, 2009).

16         The Court is not persuaded by the Commissioner's arguments.   The case law cited

17 above supports, rather than detracts, from a finding of reversible error in this case.[2]   Nor does

18 the Commissioner identify an SSR supporting reliance on the grids in light of the limitations at

19 _____

20         2 Also, none of the case law cited by the ALJ supports the decision to rely solely on the grids.
For example, *Gallo v. Comm'r of SSA*, No. 10-15851, 2011 U.S. App. LEXIS 18708 (9th Cir. Sep. 8,
21 2011), is clearly distinguishable.   The Ninth Circuit, in *Gallo*, found no prejudicial error in the ALJ's
failure to include a limitation to overhead reaching where the report assessing that limitation found
plaintiff able to perform a more strenuous type of work than found by the ALJ, the ALJ obtained the
22 testimony of a VE, and the plaintiff did not argue an overhead reaching limitation would have
disqualified her from the jobs identified at step five.   *Id*. at *3-5.

REPORT & RECOMMENDATION
PAGE -6

01  issue in this case.   *See Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005) (holding that "if the

02  Secretary wishes to rely on an SSR as a replacement for a vocational expert, it must be

03  crystal-clear that the SSR is probative as to the way in which the nonexertional limitations

04  impact the ability to work, and thus, the occupational base.")   The failure to specifically

05  discuss an overhead reaching limitation in either SSR 83-14 or SSR 96-9p [3] does not

06  necessarily imply that such a limitation would not significantly limit an individual's ability to

07  perform light or sedentary work.   *See* SSR 83-14 ("For example, at all exertional levels, a

08  person must have certain use of the arms and hands to grasp, hold, turn, raise, and lower objects.

09  Most sedentary jobs require good use of the hands and fingers.") and SSR 96-9p ("Most

10  unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger

11  actions.")   Moreover, SSR 85-15, if anything, provides support for the conclusion that a

12  limitation to only occasional overhead reaching constitutes a significant limitation requiring

13  VE testimony.   SSR 85-15 ("Reaching (extending the hands and arms in any direction) [is an

14  activity] required in almost all jobs. Significant limitations of reaching or handling, therefore,

15  may eliminate a large number of occupations a person could otherwise do. Varying degrees of

16  limitations would have different effects, and the assistance of a [VE] may be needed to

17  determine the effects of the limitations.")   Finally, while the limitation to avoiding

18  concentrated exposure to extreme cold, vibration, and hazards such as dangers machinery and

19  unprotected heights may not alone necessitate the testimony of a VE, *see* SSR 96-9p, the

20  Commissioner fails to respond to plaintiff's argument that it is the combination of the assessed

21  nonexertional limitations that necessitates VE testimony in this case.

22  _____

3 As observed by plaintiff, the Commissioner mistakenly cites to SSR 96-6p.   (Dkt. 18 at 5.)

REPORT & RECOMMENDATION
PAGE -7

01      The Court, in sum, concludes that the ALJ erred in failing to obtain VE testimony.   The

02 ALJ should, on remand, consult a VE to consider plaintiff's claim at step five.

03                                          Mental Impairment

04      At step two, a claimant must make a threshold showing that her medically determinable

05 impairments (MDI) significantly limit her ability to perform basic work activities.   *See Bowen*

06 *v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

07 activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§

08 404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not

09 severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

10 effect on an individual's ability to work.'"   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996

11 (quoting SSR 85-28).   "[T]he step two inquiry is a de minimis screening device to dispose of

12 groundless claims."   *Id*. (citing *Bowen*, 482 U.S. at 153-54).   An ALJ is also required to

13 consider the "combined effect" of an individual's impairments in considering severity.   *Id*.

14      A diagnosis alone is not sufficient to establish a severe impairment.   Instead, a claimant

15 must show that her MDIs are severe.   20 C.F.R. §§ 404.1520(c), 416.920(c).   She must,

16 therefore, present evidence of a MDI, through signs, symptoms, and laboratory findings, that

17 has lasted or can be expected to last for a continuous period of not less than twelve months.

18 *Ukolov v. Barnhart*, 420 F.3d 1002, 1004-05 (9th Cir. 2005).

19      The ALJ in this case found the medical evidence did not establish a medically

20 determinable mental impairment prior to the DLI.   (AR 18-19.)   The ALJ observed that,

21 although plaintiff had seen a social worker for counseling, the record did not contain a mental

22 health opinion, assessment, or treatment notes from a psychiatrist or other acceptable medical

01 source to establish a MDI.  (AR 19.)   He noted that plaintiff's issues appeared "to have been

02 largely situational in nature, including relationship problems with her husband, and stress over

03 raising her young children with lack of financial resources[,]" and that she "was seen only on

04 three *documented* occasions prior to 2010:  once in 2005, once in 2007, and once in 2008."

05 (*Id.*)  He concluded:   "There is little in the record to indicate that she was experiencing any

06 significant limitations from her mental complaints on a longitudinal basis."  (*Id.*)

07         The ALJ further discussed medical records dated after plaintiff's June 30, 2009 DLI,

08 noting that a November 2009 psychiatric evaluation was unremarkable, and plaintiff described

09 as "responsive and thoughtful, voluble and articulate in detailing her life philosophy[]" with

10 grossly intact orientation, memory, intellectual function, insight, judgment, and affect.  (*Id.*

11 (citing AR 215-16).)   He also noted that a consultative examination by Dr. E. Andrea Shadrach

12 "18 months post [DLI], despite a [Global Assessment of Functioning (GAF) score] of 45-50,

13 indicates that claimant had no apparent social difficulties, had good concentration, persistence

14 and memory, and was limited in daily activities, reportedly, based on pain, not mental

15 considerations."  (*Id.*)

16         The ALJ declined to call a medical expert given that an opinion as to remote onset of a

17 mental impairment "would be only speculation."   (AR 20.)  He further stated:

18         Moreover, two experts already reviewed the pertinent medical record and found
        that a severe mental impairment could not be established prior to the [DLI].   Dr.
19         Matthew Comrie and Dr. Cynthia Collingwood reviewed the record and
        determined on August 26, 2010, and January 3, 2011, respectively, that the
20         record was insufficient to determine the severity of her mental impairment.
        Nothing subsequent to January 3, 2011 indicates any reason to disturb this
21         conclusion, and I adopt it herewith.

22 (AR 21 (internal citation to AR 578-91 and 731, footnote omitted).)

REPORT & RECOMMENDATION
PAGE -9

01       The ALJ also later assessed the relevant medical opinion evidence.  He accorded

02  significant weight to the opinions of Drs. Comrie and Collingwood, repeating the reasoning

03  reflected above.  (AR 27.)  He gave some weight to the July 2010 report from Dr. Shadrach,

04  noting the "assessment was offered over a year after the claimant's [DLI] and is therefore not

05  relevant to the time period at issue."  (*Id*.)  The ALJ observed that Dr. Shadrach "dated back

06  some component's of claimant's condition five years[,]" that "[t]his was predicated on

07  self-report, and since [he] found plaintiff not notably credible, Dr. Shadrach's time-line is not

08  persuasive."  (AR 27 at n.16.)  He added that "after the fact psychiatric assessments are

09  notoriously unreliable.  (*Id*. (cited cases omitted).)   The ALJ further reasoned:

> Additionally, Dr. Shadrach's assessment is internally inconsistent with the
> contemporaneous examination performed at the time, which revealed
> independent activities of daily living including caring for two young children, as
> well as good social and cognitive functioning.  Indeed, she was fully oriented
> and pleasant and engaging with a good attitude.  There was no evidence of
> psychomotor agitation or retardation.  Her speech was logical and coherent.
> She denied any hallucination or delusions.  Her memory was intact.  Her
> sustained concentration and persistence were good.  She could perform a
> simple, three-step command successfully.  Her insight was good.  She had a
> good ability to get along with others.   I finding nothing in this report to detract
> from or vitiate the judgments of Dr. Comrie or Dr. Collingwood, with respect to
> the state of the record prior to the [DLI] on the issue of mental impairment.

(AR 28 (internal citation to AR 571-76).)

       Plaintiff fails to demonstrate any error in the ALJ's consideration of mental

impairments.  Her mere assertion that the diagnoses of Dr. Shadrach – including recurrent

major depression, personality disorder, and chronic post-traumatic stress disorder – necessarily

relate back to the relevant time period does not establish any such impairments significantly

limited her ability to perform basic work activities prior to her DLI.  Nor does the additional

diagnosis of an anxiety disorder by Dr. Shadrach, given isolated references to anxiety and the prescription of an anxiety medication prior to the DLI (AR 237, 256), suffice to demonstrate a severe impairment during the relevant time period. Likewise, the mere fact that plaintiff rejects the ALJ's description of her pre-DLI mental issues as situational does not demonstrate error.

At most, the above-described arguments present an alternative interpretation of the evidence. However, the ALJ is responsible for resolving conflicts in the medical record, *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008), and when evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ, *Tackett*, 180 F.3d at 1098. Because the ALJ's interpretation of the evidence was entirely rational, it should not be disturbed. *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

Nor does plaintiff otherwise demonstrate error in the ALJ's consideration of the evidence relating to mental impairments. While "medical reports are inevitably rendered retrospectively and should not be disregarded *solely* on that basis," *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) (emphasis added), a retrospective opinion may be discredited if it is inconsistent with, or unsubstantiated by, medical evidence from the period of claimed disability, *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995). The ALJ here properly considered, in addition to the retrospective nature of the opinions in Dr. Shadrach's report, both the absence of support for severe mental impairments prior to the DLI, as well as internal

01  inconsistency with the results of Dr. Shadrach's own examination.   (AR 19, 28.)

02      The ALJ also reasonably construed Dr. Shadrach's decision to date back five years

03  "some components" of plaintiff's condition as predicated on plaintiff's self-report, which the

04  ALJ found unreliable.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An

05  ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on

06  a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan*,

07  169 F.3d at 602).   While plaintiff takes issue with the ALJ's failure to "identify an incorrect

08  statement" she made to Dr. Shadrach to justify this conclusion, she ignores the totality of the

09  ALJ's decision.   "As a reviewing court, we are not deprived of our faculties for drawing

10  specific and legitimate inferences from the ALJ's opinion."  *Magallanes*, 881 F.2d at 755.

11  The ALJ here took note of the fact that a physician had twice described plaintiff as "dramatic,"

12  and another medical provider described plaintiff as "highly dramatic, theatrical and

13  exaggerated, and histrionic[.]"   (AR 19, n.3.)   The ALJ also, as discussed below, reasonably

14  included in his credibility assessment consideration of inconsistencies between plaintiff's

15  testimony and her activities, and concluded her "histrionic character traits do not enhance her

16  credibility."   (AR 19, n.3 and AR 26.)

17      Finally, the ALJ reasonably relied on the contradictory opinion evidence from Drs.

18  Comrie and Collingwood.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001)

19  ("Although the contrary opinion of a non-examining medical expert does not alone constitute a

20  specific, legitimate reason for rejecting a treating or examining physician's opinion, it may

21  constitute substantial evidence when it is consistent with other independent evidence in the

22  record.")  *See also* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency consultants

01  "are highly qualified" and "experts in Social Security disability evaluation[]" and their opinions

02  must be considered by the ALJ); SSR 96-6p (same).  For this reason, and for the reasons

03  discussed above, plaintiff fails to demonstrate any error in the ALJ's consideration of mental

04  impairments.

05  Credibility

06      Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

07  reject a claimant's testimony.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

08  (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  *See also Vertigan v. Halter*,

09  260 F.3d 1044, 1049 (9th Cir. 2001).  "General findings are insufficient; rather, the ALJ must

10  identify what testimony is not credible and what evidence undermines the claimant's

11  complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  "In weighing a claimant's

12  credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his

13  testimony or between his testimony and his conduct, his daily activities, his work record, and

14  testimony from physicians and third parties concerning the nature, severity, and effect of the

15  symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

16  1997).

17      In this case, the ALJ found that, while plaintiff's MDIs could reasonably be expected to

18  cause some of the alleged symptoms, he did not find plaintiff's statements concerning the

19  intensity, persistence, and limiting effects of her symptoms credible to the extent inconsistent

20  with the assessed RFC.  As outlined below, the ALJ provided several clear and convincing

21  reasons for finding plaintiff less than fully credible and made one or more errors in his

22  assessment.  While they could arguably be deemed harmless given the other clear and

REPORT & RECOMMENDATION
PAGE -13

01 convincing reasons provided, *Carmickle*, 533 F.3d at 1162-63, the ALJ should take the

02 opportunity to address the errors identified below on remand.

03 A.     Activities of Daily Living

04        The ALJ noted that plaintiff's activities of daily living included taking care of her own

05 personal needs, caring for her two young children largely on her own, cooking, performing

06 household chores, including laundry, shopping, going to church, singing in her church choir,

07 participating in Mothers of Preschoolers, socializing with friends at birthday parties and

08 barbecues, and going to the park with her children.   (AR 25.)   The ALJ, therefore, reasonably

09 concluded that plaintiff's daily activities were inconsistent with her allegation of disability.

10 *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (ALJ properly considers whether activities

11 contradict claimant's testimony), and *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)

12 ("Even where . . . activities suggest some difficulty functioning, they may be grounds for

13 discrediting the claimant's testimony to the extent that they contradict claims of a totally

14 debilitating impairment.") (citations omitted).   *See also Rollins v. Massanari*, 261 F.3d 853,

15 857 (9th Cir. 2001) (ALJ appropriately considered plaintiff's ability to care for her children

16 while husband worked long hours six days a week, along with other evidence of numerous

17 activities outside the home).   While plaintiff takes a different view, she fails to demonstrate the

18 ALJ's consideration of the evidence was not rational.

19 B.     Inconsistency

20        The ALJ identified an inconsistency between plaintiff's testimony that she takes four

21 one-to-two hour naps a day with her acknowledgement "that she cares for her four and

22 six-year-old children on her own at least some days, and she previously reported that she cared

REPORT & RECOMMENDATION
PAGE -14

01  for them on her own when her husband was out of town for work."  (AR 26.)  He reasoned:

02  "The claimant certainly does not nap four to eight hours a day with a four year old in the house,

03  at least on the days when she is not receiving any help.   This inconsistency suggests that she is

04  not being entirely forthright and reduces her overall credibility."   (*Id*.)   Contrary to plaintiff's

05  contention, the ALJ reasonably considered this inconsistency.  *See Tonapetyan*, 242 F.3d at

06  1148 (inconsistencies between claimant's statements and activities properly considered).

07  C.      Exaggeration

08          As stated above, the ALJ concluded that plaintiff's "histrionic character traits do not

09  enhance her credibility."  (AR 26 (citing AR 19, n.3).)   An ALJ appropriately considers a

10  tendency to exaggerate in rejecting a claimant's testimony.  *Tonapetyan*, 242 F.3d at 1148.

11  While plaintiff argues the ALJ unreasonably based this reasoning on Dr. Shadrach's diagnosis

12  of a personality disorder NOS, with features of borderline and histrionic personality disorders,

13  the ALJ, in fact, cited to evidence from other medical providers.   (AR 19, n.3 (citing AR 283,

14  287); *see also* AR 215, 219.)   Plaintiff fails to demonstrate the ALJ's interpretation of the

15  evidence was not rational.

16  D.      Objective Medical Evidence and Conservative Treatment

17          The ALJ concluded the medical record did not substantiate plaintiff's allegations of

18  disabling limitations.   He noted, "[r]egarding her main complaint, neck pain, diagnostic testing

19  of her cervical spine completed in March 2008 revealed minimal disc bulging at the C4-5 and

20  C5-6 levels, mild to moderate right facet arthropathy at C2-3, and mild reversed lordosis at the

21  mid-cervical spine."  (AR 26.)   He also noted the absence of cord or nerve impingement,

22  canal or neural foraminal stenosis, neurologic deficits, or neural tension signs.  (*Id*.)

01        The ALJ observed that plaintiff continued to receive conservative treatment for neck

02   pain, including injections, but the record did not show any significant change or deterioration in

03   her condition through her June 2009 DLI, and records dated around the time of her DLI

04   indicated there were no significant motor or sensory changes in her upper or lower extremities.

05   (AR 26.)   He added that a December 2009 physical examination was unremarkable, with no

06   obvious motor or sensation deficit, normal gait, station, and coordination, and normal cervical

07   spine and neck, and that, in March 2010, plaintiff had a normal gait and full range of motion in

08   her extremities, and non-focal normal neurologic examination.   (AR 26-27.)

09        Plaintiff challenges the ALJ's reasoning given her severe reflex sympathetic dystrophy

10   syndrome (RSDS).   Plaintiff points to the recognition in SSR 03-2p that "[i]t is characteristic

11   of this syndrome that the degree of pain reported is out of proportion to the severity of the injury

12   sustained by the individual."   SSR 03-2p.   She maintains the ALJ, therefore, unreasonably

13   rejected her credibility as not corroborated by objective medical evidence, as this would be

14   reasonably expected for a claimant with this condition.   *See id*. ("It should be noted that

15   conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory

16   nature of its objective findings and the complicated diagnostic process involved.")

17        The ALJ specifically related his discussion to plaintiff's severe cervical impairment.

18   In this respect, the ALJ's consideration of a lack of objective support and evidence of

19   conservative treatment can be deemed reasonable.   *See Rollins*, 261 F.3d at 857 ("While

20   subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated

21   by objective medical evidence, the medical evidence is still a relevant factor in determining the

22   severity of the claimant's pain and its disabling effects."); *Carmickle*, 533 F.3d at 1161

REPORT & RECOMMENDATION
PAGE -16

01   ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's

02   subjective testimony."); and *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that

03   "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding

04   severity of an impairment").

05          The Court also observes that the SSR relied upon by plaintiff does not prohibit the

06   consideration of a lack of objective medical support in cases involving RSDS.   Indeed, the

07   SSR states in relation to step two: "[W]henever the individual's statements about the intensity,

08   persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

09   objective medical evidence, the adjudicator must make a finding on the credibility of the

10   individual's statements based on a consideration of the entire case record."   SSR 03-2p.

11   Moreover, while maintaining the consideration of a lack of supporting objective medical

12   evidence is necessarily improper in cases involving RSDS, plaintiff fails to address any of the

13   other factors addressed in SSR 03-2p as pertinent to the step four finding.   *Id*. (ALJ must

14   consider symptoms and treatment, opinions from medical sources, third-party information).

15   Nor does plaintiff demonstrate the inaccuracy of the ALJ's description of the objective

16   evidence of record.   It is particularly notable that, as observed by the ALJ, "there is no opinion

17   contemporaneous to the period at issue that the claimant cannot work or has significant

18   vocational limitations."   (AR 28.)

19          However, the ALJ arguably should have discussed plaintiff's RSDS in pointing to a lack

20   of objective support in the record.   The Court, as such, concludes that the ALJ should take the

21

22

REPORT & RECOMMENDATION
PAGE -17

01  opportunity to address this issue on remand.[4]  Further, to the extent the ALJ again considers

02  evidence of conservative treatment, he should consider the treatment of RSDS as discussed in

03  SSR 03-2p.

04  E.    Drug Addiction

05        The ALJ stated plaintiff's "history of drug addiction also detracts from her credibility,

06  particularly on the issue of limitations caused by pain."  (AR 26.)  However, he elsewhere

07  conceded plaintiff, "to her credit, has been in remission since 2002."  (AR 19.)  The Court

08  finds the ALJ's consideration of plaintiff's remote history of drug addiction, with no further

09  discussion as to why that history implicates her credibility, to lack the support of substantial

10  evidence.  *Cf. Thomas*, 278 F.3d at 959 (evidence of lack of candor regarding drug and alcohol

11  usage supported ALJ's negative conclusions about claimant's veracity); *Edlund v. Massanari*,

12  253 F.3d 1152, 1157 (9th Cir. 2001), *amended opinion at* 2001 U.S. App. LEXIS 17960 (Aug.

13  9, 2001) (exaggeration of pain to receive pain medication properly considered); *Verduzco v.*

14  *Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent statements regarding alcohol use may

15  be considered).   If the ALJ again considers plaintiff's drug addiction history in considering her

16  claim, he must explain how that history implicates the credibility of her complaints.

17                                      Lay Statement

18        Plaintiff argues the ALJ erred in considering the lay statement from her husband.   (AR

19  25, 28-29, 138-45.)   Lay witness testimony as to a claimant's symptoms or how an impairment

20        4 Plaintiff also takes issue with the ALJ's citation to *Moothart v. Bowen*, 934 F.2d 114, 117 (7th
    Cir. 1991), an out-of-circuit decision addressing objective evidence that has since been overruled, *see*
21  *Pope v. Shalala*, 998 F.2d 473, 482 (7th Cir. 1993) (citing 20 C.F.R. §§ 404.1529 and 416.929 (1992)).
    The Court advises the ALJ to consider the status of the case cited and the Ninth Circuit precedent and
22  regulations governing the consideration of objective evidence.  *See Rollins*, 261 F.3d at 857; SSR
    96-7p.

REPORT & RECOMMENDATION
PAGE -18

01  affects ability to work is competent evidence and cannot be disregarded without comment.

02  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).   The ALJ can reject the testimony

03  of lay witnesses only upon giving germane reasons.   *Smolen*, 80 F.3d at 1288-89 (finding

04  rejection of testimony of family members because, *inter alia*, they were "'understandably

05  advocates, and biased'" amounted to "wholesale dismissal of the testimony of all the witnesses

06  as a group and therefore [did] not qualify as a reason germane to each individual who

07  testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

08        The ALJ here indicated he discounted the lay testimony for the same reasons he found

09  plaintiff not credible, including specific references to both the lack of objective support in the

10  record and conflicting medical evidence in the record.   (AR 28-29.)   He also found the

11  evidence to reflect a financial motivation on the part of plaintiff's husband, earlier noting

12  plaintiff's report that she and her husband had separated and he provided her with financial

13  and child care support, and later stating that "the absence of contemporaneous complaints in the

14  medical record may be seen as belying the testimony of symptoms presented by lay witnesses."

15  (AR 25, 28.)

16        Where an ALJ provides germane reasons for rejecting the testimony of one witness, the

17  ALJ need only point to those reasons upon rejecting similar testimony offered by a different

18  witness.   *Molina*, 674 F.3d at 1114 (citing *Valentine v. Comm'r SSA*, 574 F.3d 685, 694 (9th

19  Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the

20  claimant's] own subjective complaints, and because [the lay witness's] testimony was similar

21  to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay

22  witness's] testimony")).   Contrary to plaintiff's contention, an ALJ may properly reject lay

REPORT & RECOMMENDATION
PAGE -19

testimony as contradicted and/or unsupported by the medical record.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("Inconsistency with medical evidence is [a germane] reason [for discrediting lay testimony]."); *Lewis v. Apfel*, 236 F.3d 502, 512 (9th Cir. 2001) (contradictory medical records supported ALJ's rejection of lay testimony as to symptoms); *Glover v. Astrue*, 835 F. Supp. 2d 1003, 1005-14 (D. Or. 2011) (concluding holdings in *Smolen*, 80 F.3d 1273, and *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009), "that an ALJ may not reject lay testimony for being unsupported or uncorroborated by the medical evidence, is no longer in effect[,]" and an ALJ may properly reject lay testimony both where the testimony is inconsistent with or conflicts with the evidence and where the testimony is not supported or corroborated by objective medical evidence); *Bond v. Astrue*, CV10-00106, 2010 U.S. Dist. LEXIS 113346 at *7 (C.D. Cal. Oct. 25, 2010) (stating that, where the law is clear an ALJ may reject a claimant's testimony on the ground that it conflicts with the medical records, "[i]t would not be sensible that the claimant's own statements could be rejected on such a basis, but that the statements of third-party observers could not be so treated."); *Russell v. Astrue*, C12-1062-MAT, slip op. at 6-8 (W.D. Wash. Aug. 7, 2012) (agreeing with the reasoning in *Glover* and *Bond*).   Further, so long as germane to a particular witness, an ALJ may reject lay testimony based on a determination of financial or other motivation, as well as the absence of contemporaneous complaints in the medical record.  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006) ("The ALJ found that Shields' 'statements are inconsistent with [Greger's] presentation to treating physicians during the period at issue, and with [Greger's] failure to participate in cardiac rehabilitation.' The ALJ also considered Shields' 'close relationship' with Greger, and that she was possibly 'influenced by her desire to help [him].' The ALJ's reasons

REPORT & RECOMMENDATION
PAGE -20

01  for doubting Shields' credibility are germane to her; accordingly, it was not error for the ALJ to

02  disregard her testimony.")

03        Given the above, the ALJ in this case can be said to have provided several germane

04  reasons for discounting the lay statement from plaintiff's husband.   However, because the ALJ

05  relied on the same reasoning for the testimony of both plaintiff and her husband, he should also

06  consider on remand any impact of plaintiff's RSDS as related to the lay testimony.   In addition,

07  the Court notes that, while the perceived financial motivation of the lay witness is not

08  inherently problematic, the ALJ here pointed, in part, to information provided by plaintiff in

09  March 2011 (AR 180), to reject a lay statement written in April 2010 (AR 138-45).   The ALJ

10  should take this fact into consideration if he again rejects the lay testimony on this basis.

11                                        <u>CONCLUSION</u>

12        For the reasons set forth above, this matter should be REMANDED for further

13  administrative proceedings.

14        DATED this <u>28th</u> day of February, 2014.

15

16  _____

                                     Mary Alice Theiler
17                                     Chief United States Magistrate Judge

18

19

20

21

22

REPORT & RECOMMENDATION
PAGE -21